IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| ROBERT BAGGOTT, #28680-177, Petitioner, | ) | |
| v. | ) | CASE NO. 2:23-cv-00572-BL-SMD |
| ALAN COHEN, WARDEN, FPC MONTGOMERY, Respondents. | ) | |

**MEMORANDUM OPINION AND ORDER**

Robert Baggott, a *pro se* federal inmate, filed this petition for writ of habeas corpus under 28 U.S.C. § 2241 seeking prior custody credits for the 245 days from January 21, 2016, the date he was sentenced in two Texas state court cases, to September 22, 2016, the date he was sentenced in a federal court case.[1] (Doc. 1; Doc. 1-4 at 1). Respondent contends the § 2241 petition is due to be dismissed as meritless because the requested credit was applied to his state court sentence, thereby preventing the Bureau of Prisons from crediting it against his federal sentence, and that all prior custody credits have been calculated and applied correctly. (Doc. 12 at 2–5; Doc. 12-1 ¶ 13).

[1] Baggott was confined at the Montgomery Federal Prison Camp when he filed this petition. (Doc. 1). While he remains in federal custody, Baggott has since been transferred to a residential reentry center in Texas. (Doc. 29). The habeas statute permits district courts to grant relief only "within their respective jurisdictions," 28 U.S.C. § 2241(a), and jurisdiction depends on a petitioner's location at the time of filing. *See Rumsfeld v. Padilla*, 542 U.S. 426, 434–35 (2004). A subsequent transfer after the petition is filed does not divest a court of jurisdiction. *See id.* at 440–41 (citation omitted).

For the reasons explained below, Baggot's § 2241 petition will be **GRANTED** in part and **DENIED** in part.

## I. BACKGROUND

On January 21, 2016, Baggott was sentenced in two Texas state court criminal cases for possession of methamphetamine. (Doc. 12-1 at 14–19). He was sentenced to a total of six years' imprisonment, and the two sentences were ordered to run concurrently. (*Id*.). A few weeks after his state sentencing, he was indicted on federal charges in the Northern District of Texas for conspiracy to possess with intent to distribute methamphetamine. (*Id.* at 21–24). He was transferred from state custody to federal custody on February 25, 2016, on a writ of habeas corpus *ad prosequendum* and sentenced on the federal charges on September 22, 2016. (*Id.* at 26, 29, 33).

The sentencing court in Baggott's federal case found that his two Texas state cases were based on relevant conduct and ordered as follows:

> The court further ORDERS that the defendant be, and is hereby, committed to the custody of the United States Bureau of Prisons to be imprisoned for a term of 188 months. The defendant has served a term of imprisonment in [two state court cases], which are considered relevant conduct to the instant offense. Therefore, the defendant shall be credited the time in custody he has served on these cases toward his sentence of 188 months. The sentences in Case Nos. 55952-C and 56309-C shall run concurrently with the defendant's sentence in this case.

(Doc. 1-8 at 1). After sentencing, Baggott was transferred back to Texas state custody until June 20, 2018, when he was paroled on his state sentences and remanded to federal custody. (*Id.* at 35).

## II. DISCUSSION

Baggott served time in pretrial detention until his state court sentencing on January 21, 2016. There is no dispute that, under 18 U.S.C. § 3585(b)(2), the BOP is prohibited from awarding prior credit for time spent serving another sentence.[2] There is also no dispute that the time period in question, which runs from Baggott's state court sentencing to his federal court sentencing, was credited to his state sentence. Baggott argues, however, that the sentencing judge intended for him to receive credit under § 5G1.3(b) of the United States Sentencing Guidelines for all time served in state custody up to the date of his federal sentencing. (*See* doc. 1 at 6; doc. 18 at 2).

### A. Exhaustion

"[A]n inmate must typically exhaust his or her administrative remedies with the BOP before seeking judicial relief."[3] *Rodriguez v. Lamer*, 60 F.3d 745, 747 (11th Cir. 1995). Baggott asserts that, in an effort to exhaust his claims, he filed a BP-9 with the

[2] An exception to this general rule exists pursuant to *Willis v. United States*, 438 F.2d 923 (5th Cir. 1971), under which the BOP may award prior custody credit for time spent in state custody on a sentence that begins on or after date of the federal offense up to the date the first sentence (state or federal) begins to run, as long as the sentences were ordered to run concurrently. Here, Baggott's state court sentence began after the date of his federal offense, and the federal sentence was ordered to run concurrently with his state sentences. Accordingly, the BOP gave Baggott credit for 240 days of state custody up to the date the first sentence began to run—in Baggott's case, the state sentence—on January 21, 2016, even though he also received credit for that time on his state court sentence. Doc. 12-1 at ¶¶ 12–13.

[3] Full exhaustion of the BOP's administrative remedy procedure has three steps: (1) filing a request for administrative remedy, known as a BP-9, with the warden of the facility; (2) filing a regional administrative remedy appeal, known as a BP-10; and (3) filing a central office administrative remedy appeal, known as a BP-11. "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules." *Woodford v. Ngo*, 548 U.S. 81, 90–91 (2006); *Bryant v. Rich*, 530 F.3d 1368, 1378 (11th Cir. 2008) (citation omitted); *Blevins v. FCI Hazelton Warden*, 819 F. App'x 853, 856 (11th Cir. 2020).

warden (doc. 1 at 2; doc. 1-1 at 1), a BP-10 with the regional office (doc. 1 at 3; doc. 1-1 at 3), and a BP-11 with the central office (doc. 1 at 3; doc. 1-1 at 5). The BP-11 was rejected, however, because Baggott did not include a copy of his BP-10 or a copy of the BP-10 response (doc. 1-1 at 6). Baggott filed a second BP-11 (doc. 1-1 at 7), but it was rejected for the same reason as the first (doc. 1-1 at 8).[4] Thus, it is clear from the face of the petition that Baggott failed to fully exhaust his administrative remedies before filing this action.

Respondent has stated that he is not challenging Baggott's petition on grounds of exhaustion (*see* doc. 12 at 3 n.1; doc. 23 at 4 n.1), but exhaustion should be excused only in the "extraordinary circumstances" that administrative remedies are "unavailable" or "patently futile." *Fuller v. Rich*, 11 F.3d 61, 62 (5th Cir. 1994). Baggott has offered no explanation for his failure to properly exhaust; he does not argue that prison officials thwarted his efforts or that submitting his final appeal with the required documentation was unavailable or would have been futile. He simply skipped the last step of exhaustion and proceeded directly to this court. Thus, Baggott's petition is due to be dismissed for failure to exhaust.

Nevertheless, the exhaustion rule is not jurisdictional and is judicially imposed rather statutory. *Santiago-Lugo v. Warden*, 785 F.3d 467, 474–75 (11th Cir. 2015). The

[4] Baggott's second BP-11 (doc. 1-1 at 7, dated July 9, 2023) asserts that he did not file the BP-10 response because he did not receive a response within the 30-day response time. However, he filed a copy of the BP-10 response with his § 2241 petition. (*See* doc. 1-1 at 4, BOP-10 response dated July 23, 2023). His second BP-11 rejection, dated July 31, 2023, allowed him 15 days to resubmit his appeal with the proper forms, but there is no indication that he did so.

Eleventh Circuit has reasoned that "judicially developed exhaustion requirements might be waived for discretionary reasons by courts." *Hicks v. Jordan*, 165 F. App'x 797, 799 (11th Cir. 2006) (citing *Richardson v. Reno,* 162 F.3d 1338, 1374 (11th Cir. 1998) (emphasis added), *judgment vacated on other grounds,* 526 U.S. 1142, (1999)); *see also Rodriguez v. Lamer*, 60 F.3d 745, 747 (11th Cir. 1995) (regarding objection based on exhaustion as waived when government failed to raise it). Accordingly, in exercising its discretion, because Baggott's petition is due to be granted, he has completed his term of imprisonment in a detention facility and been transferred to a residential reentry center, and Respondent failed to challenge his lack of exhaustion, the court finds that waiver of the exhaustion requirement is warranted and will, therefore, address the merits of Baggott's petition.

**B. Application of U.S.S.G. § 5G1.3(b)**

Section 5G1.3(b) applies to a federal sentence when a defendant has an undischarged term of imprisonment and provides as follows:

> (b) If . . . a term of imprisonment resulted from another offense that is relevant conduct to the instant offense of conviction . . . the sentence for the instant offense shall be imposed as follows:
>
> (1) the court shall adjust the sentence for any period of imprisonment already served on the undischarged term of imprisonment if the court determines that such period of imprisonment will not be credited to the federal sentence by the Bureau of Prisons; and
>
> (2) the sentence for the instant offense shall be imposed to run concurrently to the remainder of the undischarged term of imprisonment.

Additionally, Application Note 2 under the Commentary of § 5G1.3 states:

> (C) Imposition of Sentence.—If subsection (b) applies, and the court adjusts the sentence for a period of time already served, the court should note on the

> Judgment in a Criminal Case Order (i) the applicable subsection (*e.g.*, §5G1.3(b)); (ii) the amount of time by which the sentence is being adjusted; (iii) the undischarged term of imprisonment for which the adjustment is being given; and (iv) that the sentence imposed is a sentence reduction pursuant to §5G1.3(b) for a period of imprisonment that will not be credited by the Bureau of Prisons.[5]

*In Coloma v. Holder*, 445 F.3d 1282, 1285–86 (11th Cir. 2006), the prisoner was serving an 188-month sentence for conspiracy to import a controlled substance, a sentence that resulted from a second federal prosecution for a second drug importation conspiracy. *Id*. at 1283. Because the second sentence was ordered to run concurrently with the first sentence, Coloma argued in his § 2241 petition that he was entitled to pre-custody credits back to the beginning of the first sentence—*i.e.*, that he should get credit for all time served on the first sentence toward the second sentence. *Id*. (emphasis added).

In considering Coloma's claims, the court noted that § 5G1.3 provides a mechanism for a second sentencing court to account for a previous sentence for relevant conduct. *Id*. at 1284–85. However, it also noted that the accounting under § 5G1.3 "occurs when a sentencing court 'adjust[s the sentence] for any term of imprisonment already served as a result of the conduct taken into account in determining the sentence for the instant offense'" and, "[f]or clarity, the court should note on the Judgment in a Criminal Case Order that the sentence imposed is not a departure from the guidelines because the defendant has been credited for guideline purposes under § 5G1.3(b) with [time] served." *Id*. at 1285 (quoting U.S.S.G. § 5G1.3 cmt. n.2). Coloma's second sentencing court ordered his sentence to run

[5] The Guidelines provision and application note above are taken from the United States Sentencing Guidelines in effect at the time of Baggott's sentencing on September 22, 2016.

concurrently with his first sentence, but it made no mention of § 5G1.3 or credit for time previously served. As a result, the Eleventh Circuit "presume[d] the district court properly applied the Guidelines," and, "to the extent the district court believed that Coloma's two prosecutions arose from the same course of criminal conduct as Coloma insists on appeal that they did, the court properly applied § 5G1.3(b) to deduct from the second sentence the proper amount of time to account for that already served under the first sentence." *Id*. at 1285–86.

Like *Coloma*, in *Chamberlain v. Neely*, No. 5:21-CV-200-TKW-MAL, 2023 WL 3060813, at *1 (N.D. Fla. Apr. 24, 2023), the judgment stated the petitioner's federal sentence was to run concurrently with her state sentence, but it went a step further and stated she was also to "receive credit on her 180 month [federal] sentence for any time served on [her state] sentence." The district court denied the § 2241 petition and refused to allow the credit, stating that § 3585(b) prohibited the BOP from doing so. *Id*. It also stated that, even if the sentencing court intended for the petitioner's federal sentence to be reduced by the time already served on her state sentence, the reduction could not be accomplished by "crediting" the time served on the state sentence against the federal sentence, again relying on § 3585(b). *Id*. Finally, it noted that the sentencing court could have accounted for the time petitioner had already served on her concurrent state sentence by "adjusting" the length of her federal sentence under U.S.S.G. § 5G1.3(b) but that it failed to do so. *Id*. (citing *United States v. Brannon*, 377 F. Supp. 2d 667, 670 (E.D. Wis.

2005) (explaining that a U.S.S.G. § 5G1.3 "adjustment," which the court controls, is not the same as a § 3585(b) "credit," which BOP controls)).[6]

Baggott's judgment states that he "shall be credited the time in custody he has served on these cases toward his sentence of 188 months." Like *Coloma* and *Chamberlain*, the sentencing judge made no reference to § 5G1.3(b), and the judgment contains no accounting to adjust the second sentence by the amount of time already served. However, sometime after filing his petition, Baggott filed an excerpt from his sentencing hearing transcript. (*See* Doc. 18-1). The Government has not disputed the accuracy of the transcript and, in fact, has not acknowledged or addressed the transcript since it was filed. At the sentencing hearing, Baggott's counsel raised the issue of whether Baggott would get "all the time credit he's entitled to" for time served on this state court cases. (Doc. 18-1 at 2). The court asked for the government's response, and the following discussion occurred:

> Mr. Wolfe [responding for the government] . . . [T]he defendant objects to ensure that he is given full credit for time served on any state sentences that are ordered to run concurrent to his federal

[6] The *Chamberlain* court found that the BOP could not effectuate the sentencing court's intent and suggested that the appropriate remedy may be a § 2255 petition or a motion under Rule 36 of the Federal Rules of Criminal Procedure (citing *Robertson v. Werlich*, 667 F. App'x 853, 854 n.3 (5th Cir. 2016) (explaining that Rule 36 can be used to correct "a discrepancy between an oral statement at a sentencing hearing and the written judgment")). However, in *United States v. Pruitt*, 417 F. App'x 903, 904 (11th Cir. 2011), the Eleventh Circuit held that the district court erred in construing an inmate's motion for credit for time served under § 5G1.3 as a successive § 2255 petition instead of a § 2241 petition.

Baggott filed a motion in his sentencing court seeking a *nunc pro tunc* designation for the time served on his state court sentences, asserting the same arguments that he asserts in this § 2241 petition. By then the case had been reassigned to a different district judge, and the court denied the motion, directing him to exhaust his administrative remedies and then file a § 2241 petition. *See United States v. Baggott*, Case No. 4:16-CR-21-P-9, (N.D. Tex.) (Docs. 810 and 811). Under *Pruitt*, Baggott's claims are properly brought pursuant to § 2241, as he is not asking this court to vacate or modify his sentence but to direct the BOP to implement the sentence imposed.

sentence. The government does not object to such credit, if it is warranted by the Court's sentence.

The Court: Well, if they are related – let me see if I can figure that one out.

Mr. Davis [responding for Baggott]: Your Honor, it's paragraphs 51 and 52 in the Presentence Report are the two cases out of Wichita County that he had previously pled that are the – a basis of or part of this case, and paragraphs 15 and 16 of the PSR detail the criminal conduct that was actually the basis for the state convictions in 51 and 52.

The Court: Well, if I order the sentence here to run concurrently with those state cases, wouldn't that automatically give him the credit for the time he's already served in those cases?

Mr. Davis: I think so, as long as that's clearly set forth.

The Court: Well, if I order them to run concurrently, that will be clearly set forth.

Mr. Davis: Yes, sir. I'm just aware that the Court also has the option to stack the sentence, but reduce the federal sentence by the amount of the state sentence if it so chose, but –

The Court: Do you see any problem, Mr. Wolfe, in resolving this problem by simply ordering that those sentencing in those state cases run concurrently with this sentence?

Mr. Wolfe: No, Your Honor. I see no problem doing it that way, no, Your Honor.

The Court: Okay. Okay. Then we'll solve that problem that way.

. . .

The Court: And according to the information I have, he would be entitled to – how much credit are you saying he's entitled to?

Mr. Davis: It's approximately 16 months, Your Honor. I have not honestly totaled up exactly, but he – Mr. Baggott was in custody, I believe, twice briefly in the spring of 2015, and then went into custody finally in June of 2015, and has been in continual custody on those state cases since then.

> The Court: Well, he'll be entitled to credit for any time he's already served on those state cases and the judgment will make that clear.

(Doc. 18-1 at 2–7). As mentioned above, the BOP credited Baggott with 240 days, or approximately eight months, for time served in his state court cases. Based on the sentencing transcript, however, there can be no dispute that, despite the absence of notations on Baggott's judgement, the sentencing court expressed a clear intent that Baggott was to receive credit for the approximate sixteen months he had already served on his state court cases.

Although the *Coloma* court presumed the district court properly applied § 5G1.3 when calculating the sentence, *Coloma* involved only the question of when a second concurrent sentence begins; the sentencing judge made no specific findings that Coloma's first sentence involved "relevant conduct" or that he was entitled to credit for all time served on the first sentence. *Coloma,* 445 F.3d at 1283. And although the *Chamberlain* court found the BOP could not effectuate the sentencing court's intent, in *Pruitt* the Eleventh Circuit found that a § 2241 petition was the proper avenue for seeking credit for time served under § 5G1.3. Further, having had the benefit of reviewing the sentencing hearing transcript, it is clear the sentencing court intended for Baggott's sentence to be adjusted under § 5G1.3(b) to account for the sixteen months he had already served in state court before his federal sentencing. To the extent Baggott's written judgment is ambiguous because it does not reference § 5G1.3 or contain calculations of an "adjustment" to Baggott's sentence, it does not reflect the oral sentence pronounced by the sentencing court. When a written criminal judgment conflicts with the district court's unambiguous oral

pronouncement of the sentence, "the oral pronouncement governs." *United States v. Bates*, 213 F.3d 1336, 1340 (11th Cir. 2000).

Accordingly, the undersigned finds that the BOP's failure to implement the sentence imposed by the sentencing court mandates habeas corpus relief under § 2241. *See, e.g., Wilson v. United States*, No. 05:13CV445OC10PRL, 2016 WL 7741720, at *3 (M.D. Fla. Oct. 14, 2016) (upon consideration of § 2241 petition, finding petitioner's sentence "due to be adjusted under U.S.S.G § 5G1.3(b)(1) in order to assure that the length of his incarceration corresponds to the court's intention as expressed during his sentencing hearing");[7] *Escribano v. Schultz*, No. CIV.07-3204(RBK), 2009 WL 3230833, at *5 (D.N.J. Oct. 1, 2009) (after reviewing plea agreement and sentencing hearing transcript, finding that federal sentencing court expressed clear intent to adjust sentence to account for time spent in custody on prior local sentence under § 5G1.3(c) and granting § 2241 habeas petition with directions that BOP recalculate sentence by adjusting federal sentence to account for time served on state sentence).[8]

In his petition, Baggott requests that his original sentence be adjusted from 188 months to 172 months to account for the approximate sixteen months he served before his state court sentencing. However, §5G1.3(b) provides that a sentencing judge shall adjust a sentence by the time served that the BOP cannot credit. As explained above, the BOP

---

[7] In Wilson, the § 2241 petition was filed in the sentencing court, so the court vacated its sentencing order and entered a corrected order.

[8] Although *Escribano* involved application of U.S.S.G. § 5G1.3(c), the Court finds this distinction inapplicable here, as *Esribano* demonstrates that an inmate is entitled to imposition of the sentence actually pronounced by his sentencing court, regardless of whether he was sentenced under § 5G1.3(b) or 5G1.3(c).

credited Baggott with 240 days of *Willis* credit. Thus, to implement the sentence imposed, the proper adjustment would be to adjust Baggott's sentence by the 245 days the BOP cannot credit.

## III. CONCLUSION

For the foregoing reasons, the Court finds that Baggott's § 2241 petition is due to be **DENIED** to the extent he seeks habeas relief to implement an original sentence of 172 months of imprisonment but **GRANTED** to the extent he seeks habeas relief to implement his sentencing court's pronouncement of a 188-month sentence adjusted by the 245 days served on his state sentence that cannot be credited by the Bureau of Prisons.

An appropriate order and final judgment will follow.

**DONE** and **ORDERED** on this the 1st day of September, 2026.

**BILL LEWIS**
UNITED STATES DISTRICT JUDGE